[No. 16584. *En Banc.* October 2, 1922.]

# The State of Washington, *Respondent*, v. J. Richard Brown, *Appellant.*[1]

INTOXICATING LIQUORS (49)—OFFENSES—JOINTIST—EVIDENCE OF SALES. In a prosecution for being a jointist, in which it appears that a whiskey still was operated by the accused on his premises, evidence as to whether sales were made on the place is admissible.

SAME (51)—OFFENSES—JOINTIST—INSTRUCTIONS. In a prosecution for being a jointist, upon a conflict in the evidence as to whether sales were made on the premises, it is confusing and error to instruct that it is immaterial whether actual sales were made at the premises, if the place was wilfully conducted and maintained for that purpose.

SAME (51). In a prosecution for being a jointist, it is error to give an instruction as to the defendant's aiding or abetting the offense, where all the evidence related to his actual proprietorship, jointly with another, of a still, the liquor, and the sale of the latter, and there was no evidence of his being an accessory.

SAME (30, 51)—JOINTIST—ILLEGAL POSSESSION—PRESUMPTIONS—INSTRUCTIONS. In a prosecution for being a jointist, defined by Rem. Comp. Stat., § 7328, as conducting a place for the unlawful sale of intoxicating liquor, while an instruction as to the statutory presumption from possession is proper, it is error to instruct that possession of intoxicating liquor creates a presumption that it is for the purpose of "unlawful sale"; since Id., § 7329, only makes possession *prima facie* evidence that it was kept for unlawful sale or disposition."

SAME (30, 51). In a prosecution for being a jointist, it is error to instruct that if intoxicating liquor was found on defendant's premises, it would be presumed that it was in his possession, and that failure to give notice after having knowledge thereof may alone warrant a finding of guilty intent; whether liquor on defendant's premises was in his possession being a question for the jury.

Appeal from a judgment of the superior court for Spokane county, Blake, J., entered April 28, 1920, upon a trial and conviction of being a jointist. Reversed.

[1]Reported in 209 Pac. 855.

*John T. Mulligan* and *Neil C. Bardsley*, for appellant.

*Joseph B. Lindsley* and *James Emmet Royce*, for respondent.

PARKER, C. J.—The defendant Brown and one Cannell were by information charged with the crime of being jointists, as follows:

"That the said defendants, J. Richard Brown and J. F. Cannell, on or about the 2nd day of December, 1919, in Spokane county, Washington, then and there being, did then and there wilfully, unlawfully and feloniously, conduct and maintain a place for the unlawful sale of intoxicating liquor."

A separate trial of Brown in the superior court resulted in a verdict of a jury finding him guilty, upon which judgment was entered against him accordingly; from which he has appealed to this court.

It seems desirable at the outset that we have before us the statute under which appellant was convicted. It is found in Laws of 1917, ch. 19, § 17h, p. 60, as follows:

"Any person who opens up, conducts or maintains, either as principal or agent, any place for the unlawful sale of intoxicating liquor, be and hereby is defined to be a 'jointist.' Any person who carries about with him intoxicating liquor for the purpose of the unlawful sale of the same be and hereby is defined to be a 'bootlegger.' Any person convicted of being either a 'jointist' or 'bootlegger' as herein defined shall be deemed guilty of a felony and shall be punished by imprisonment for not less than one nor more than five years." Rem. Comp. Stat., § 7328.

For present purposes we deem it sufficient to observe that the jury were fully warranted in believing the following facts to be established by the evidence: The Brown and Cannell families lived on adjoining

premises in Spokane. The Brown place was as to outward appearances simply the home of himself and family, while the Cannell place was as to outward appearances the home of himself and family, and also his grocery store. On December 2, 1919, police officers searched both places and arrested both Brown and Cannell. Intoxicating liquor was discovered on the Cannell premises. After going through the cellar or basement of the Brown home—he being present—the officers insisted on searching the upper part of the house, and on reaching the top of the stairs Brown said to one of the officers, "You've got me; I hope you won't be too hard on me." They found a still in operation in an upper room, and when one of the officers asked Brown if it was his, he admitted that it was. They found several jugs of liquor in the room. He told the officers, "Now this is to be the last batch." When one of them asked, "Why didn't you cut this out before?" he answered, "I had too much money tied up in it." Upon being taken to the police station, Brown made a statement wherein he admitted he and Cannell had been running the still jointly for some two months past; that the liquor was whisky; that they got twenty dollars a gallon for it—which they divided equally, sharing equally the expense of operation; that the still was operated about two days in each week and produced about five gallons per week; and that the product was sold by his partner Cannell. There was no direct evidence of sales of liquor being made on the Brown premises. There was affirmative testimony given in Brown's behalf tending to show that no sales were made there. We do not find it necessary that we express any opinion as to whether or not the jury would have been warranted, under the circumstances shown, in believing that sales had been made there.

It is first contended in behalf of appellant that the trial court erred in giving to the jury the following instruction:

"It is immaterial whether the defendant or any one else ever made an actual sale of intoxicating liquor at the premises described in the information and by the evidence, if the place was wilfully conducted or main-tained by the defendant for that purpose."

It is argued that this language had the effect of telling the jurors that they should disregard all of the evidence tending to show that sales had or had not been made at the place claimed by the prosecution to have been maintained "for the unlawful sale of intoxicating liquor," there being testimony introduced in appellant's behalf tending to show that no sales were made at the place in question. It seems plain to us that evidence tending to show that sales were made at the place in question, and also evidence tending to show that sales were not made at the place in question, was proper to go to the jury with other evidence. Manifestly such testimony, whether it tends to show sales were made or tends to show sales were not made, is relevant to the inquiry as to whether or not the place in question is maintained "for the unlawful sale of intoxicating liquor," even though one may be convicted of maintaining a place for that purpose in the absence of proof of actual sales made there. Our decision in *State v. Hessel,* 112 Wash. 53, 191 Pac. 637, is in harmony with and supports this view of the law. While it may be argued with a fair show of reason that the concluding words, "if the place was wilfully conducted or maintained by the defendant for that purpose," negative the meaning of the instruction as insisted upon by counsel for appellant, we think, in any event, the instruction is confusing and unfortunately

worded and should not have been given. Had the instruction plainly told the jury that mere want of proof of actual sales at the place in question would not of itself prevent a finding of the defendant guilty of maintaining a "place for the unlawful sale of intoxicating liquor," it would not have been objectionable. The instruction seems to have the effect of telling the jurors that if they believe the ultimate fact to be established from the evidence, to wit, that appellant maintained a "place for the unlawful sale of intoxicating liquor," then this material evidence given to aid them in such determination is immaterial. We think the instruction was erroneous.

It is next contended that the court erred in giving to the jury the following instruction:

"If you are satisfied from the evidence, beyond a reasonable doubt, that some other person or persons conducted or maintained the place in question for the unlawful sale of intoxicating liquor and that the defendant aided or abetted in the commission of such offense, whether present or absent, or directly or indirectly counselled such other person or persons to commit such offense, your verdict should be guilty."

It seems to us this instruction should not have been given upon the trial, in view of the fact that all of the evidence tending to show appellant's guilt or innocence related to his actual proprietorship, jointly with Cannell, in the still, the liquor and the sale of the latter. It seems to us there was no room for considering any question of appellant's being an accessory under any view of the case.

It is further contended that the trial court erred in giving to the jury the following instruction:

"Under the laws of this state it is unlawful for any person, other than a regularly ordained priest, clergyman, or rabbi actually engaged in ministering to a re-

ligious congregation, to have in his possession any intoxicating liquor other than alcohol. And when it is proven beyond a reasonable doubt that one, who is not of the above described class of persons, has intoxicating liquor other than alcohol in his possession, then a presumption arises that such person held and kept such liquor for the purpose of unlawful sale. This presumption is not conclusive, however, but may be rebutted by the person having the liquor in possession."

The principal argument seems to be that this instruction is erroneous because it in effect told the jury that possession of intoxicating liquor at a certain place is *prima facie* evidence that the place is being maintained "for the unlawful sale of intoxicating liquor." If this were the effect of the instruction, that would be substantial ground for holding it to be erroneous, but such we think is not its meaning. The instruction is manifestly an attempt to state the statutory rule of evidence arising from the possession of intoxicating liquor, which statutory rule is that "such possession and proof thereof shall be *prima facie* evidence that said liquor was so held and kept for the purposes of unlawful sale or disposition." Rem. Comp. Stat., § 7329. The instruction is not erroneous for the reason claimed, but is erroneous for another reason. The statutory rule of evidence attempted to be stated by the instruction is not unqualifiedly, as stated in the instruction, that such possession of intoxicating liquor creates a presumption that it is for the purpose of *"unlawful sale"*; but makes such possession *"prima facie* evidence that said liquor was so held and kept for the purposes of *unlawful sale or disposition."* We think the instructing of the jury upon this statutory rule of *prima facie* evidence in a jointist case would not be erroneous; since manifestly the proof of possession of intoxicating liquor by the defendant would be a fact pertinent to the

inquiry of whether or not a place was being maintained by him "for the unlawful sale of intoxicating liquor," assuming, of course, that in the particular case there was evidence tending to show that the defendant was in possession of intoxicating liquor; but that would not be telling the jury that such possession would give rise to a presumption that the defendant was maintaining a "place for the unlawful sale of intoxicating liquor." We are of the opinion, however, that such instruction ought to be, in substance at least, in the language of the statute which prescribes the rule; and that it would be better, when giving such instruction, to use the exact language of the statute.

It is further contended that the trial court erred to the prejudice of appellant in giving to the jury the following instruction:

"If you are satisfied from the evidence, beyond a reasonable doubt, that intoxicating liquor was found on premises of which the defendant was the proprietor and of which he had personal and physical possession, it would be presumed that the liquor upon the premises was in his possession. This, however, is also a rebuttable presumption and is not conclusive on defendant. He may offer evidence to show that he had no knowledge of the existence of the liquor on the premises or that it did not belong to him. However, if he did have knowledge of its existence on the premises for a sufficient length of time for him to have notified the authorities of its presence, and failed to do so, he would be chargeable with possession of it even though he did not own it and the consequent presumption arising from such possession would arise against him."

The concluding language of this instruction tells the jury in substance that one who is possessed of knowledge of the commission of an offense, which knowledge he fails to disclose, may upon proof of such fact alone be held guilty of criminal intent with reference to such

offense. Plainly we think such is not the law. This court so held in effect in *State v. Peasley,* 80 Wash. 99, 141 Pac. 316. See, also, vol. 1, Bishop's New Criminal Law, § 694; and 1 R. C. L. 148. Besides we do not think that the law presumes that liquor or any other personal property upon premises is in possession of the one who is in possession of the premises. It may be that the jury may so presume from the circumstances of a particular case, but it is not for the court to so tell the jury. That is a question of fact, not of law. We think the giving of this instruction was error.

We conclude that appellant did not have a fair submission of his case to the jury. The trouble with these instructions, viewed as a whole, is that they have a strong tendency to impress upon the minds of the jurors the thought that the ultimate question in the case was as to the proprietorship of the still, the liquor and the place, rather than as to whether or not it was a place maintained by appellant "for the unlawful sale of intoxicating liquor." The jurors could well gain the impression from these instructions that all that was necessary for them to find was that the still, the liquor and the place were in the proprietorship of appellant with Cannell. It may be conceded that so limiting the inquiry by the instructions would have been proper had appellant been charged only with unlawfully manufacturing liquor, or with the unlawful possession of liquor. But he was charged with, and found guilty of, something more than that, to wit, the penitentiary offense of maintaining a "place for the unlawful sale of intoxicating liquor." We are convinced that appellant is entitled to a new trial upon this serious charge.

Other contentions are made in appellant's behalf touching the constitutionality of the law under which appellant was tried and convicted. These contentions,

we think, are at this time wholly without merit, in view of a number of recent decisions of this court holding the law constitutional.

It is finally asserted, but not argued, that the testimony was not sufficient to support a verdict and judgment against appellant as rendered; and that for that reason the trial court erred in refusing to award an instructed verdict in his favor. In view of the entire absence of argument upon this claim of error, we feel that we are not called upon to express any opinion as to whether or not it is well founded.

The judgment of the trial court is reversed and the appellant awarded a new trial. The cause is remanded to the superior court for further proceedings in harmony with the views herein expressed.

HOLCOMB, MITCHELL, HOVEY, and TOLMAN, JJ., concur.

BRIDGES, J. (concurring)—I concur in the result, and in so doing I wish to say that I think there was sufficient evidence to carry the case to the jury.

FULLERTON, MACKINTOSH, and MAIN, JJ., concur with BRIDGES, J.